IN THE UNITED STATES COURT OF A7PPEALS
ELEVENTH CIRCUIT
11th Cir. Case No. 24-14020

DEBORH GREY,

      Appellant,

vs.

VENGROFF WILLIAMS, INC.
and SECOND LOOK, INC.,

      Appellees.

_____/

## PLAINTIFF-APPELLANT'S INITIAL BRIEF

Christopher C. Sharp
Florida Bar No. 996858
SHARP LAW FIRM, P.A.
1600 W. State Road 84, Suite C
Fort Lauderdale, Florida 33315
Phone: (954) 909-4246
Fax: (954) 206-8444
csharplaw@aol.com
chris@csharplawfirm.com
*Attorney for Appellant*

Dated:  June 10, 2025

## **Certificate of Interested Persons**

Appellant, pursuant to Eleventh Circuit Rule 26.1-1, certifies that the following persons and business entities have an interest in the outcome of this appeal:

1. Collier, Jason A., Counsel for Defendants/Appellees

2. Daiker, Duane A. - Attorney for Plaintiff/Appellees

3. Grey, Deborah, Plaintiff/Appellant

4. Guerin, Ryan M., Counsel for Defendants/Appellees

5. Second Look, Inc., Defendant/Appellee

6. Sharp, Christopher C., Counsel for Plaintiff/Appellant

7. Sharp Law Firm, P.A., Plaintiff's/Appellant's law firm

8. Shumaker, Loop & Kendrick, LLP, Defendants'/Appellees' law firm

## **Statement Regarding Oral Argument**

Plaintiff/Appellant requests oral argument. Plaintiff/Appellant believes this Court's review would be significantly aided by oral argument to clarify the facts and legal arguments presented by the parties. Rule 34(a), FED. R. APP. P.; 11th Cir. R. 34-3 (c).

## Table of Contents

Certificate of Interested Persons…………………………………………………………1

Statement Regarding Oral Argument……………………………………………………2

Table of Contents ……………………………………………………………………..3

Table of Citations…………………………………………………………………..5

Statement of Jurisdiction……………………………………………………………8

Statement of the Issues …………………………………………………….…9

Statement of the Case………………………………………………………....11

Course of proceedings and disposition below……………………………….…10

Statement of the facts………………………………………………………...13

Statement of the standard or scope of review………………………………………18

Summary of the Argument………………………………………………………..20

Argument……………………………………………………………………………..22

Point I.     The district court erred in requiring Appellant to show both that her COVID symptoms at the time of her termination were more than "minor" and that her diagnosis of bilateral COVID pneumonia either "did or was expected to persist for over six months" to establish that she was regarded as disabled under the ADA………………………..22

Point II.    The district court erred in rejecting Appellant's comparator evidence of Appellees' more favorable treatment of her 59-year old replacement Maryann Vitikiez who did not close her first new deal until more than six months after completing her 60-day probationary period and was terminated for misconduct at the end of 2023 after bringing in only two new clients during the 18 months she was employed……………….30

Point III    If the district court properly admitted the comparator evidence and found that Appellant was regarded as disabled under the ADA, the curious timing of her termination just one day after requesting reasonable accommodations, combined with the subjective and shifting nature of the termination reasons and the more favorable treatment of Maryann Vitkiez would have been sufficient under Rule 56 to raise an inference of pretext or create a "convincing mosaic" sufficient to allow a reasonable jury to find that the Appellees discriminated against Grey under the ADA or the ADEA……………………………………..36

Conclusion …………………………………………………………… …39

Certificate of Compliance ………………………………………….…40

Certificate of Service …………………………………………………40

## Table of Citations

**Federal Cases**

*Allen v. Tyson Foods*,  121 F.3d 642 (11th Cir. 1997)……………………….….…18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………….18

*Booth v. GTE Fed. Credit Union* 8:21-cv-1509-KKM-JSS (M.D. Fla. Nov. 20, 2021)

*Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354 (11th  Cir. 1999).

*Cost Recovery Servs. LLC v. Alltell Communications, Inc*., 259 F. App'x 223 (11th

    Cir. 2007)………………………………………………………..…34

EEOC v. STME, LLC, 938 F.3d 1305, 1314 (11th  Cir. 2019)…………………….22

*Eshleman v. Patrick Indus., Inc*., 961 F.3d 242 (3d  Cir. 2020)…………………...27

*Forsyth v. Univ. of Ala., Bd. of Trs.*, 2021 WL 4075728 (11th  Cir. Sept. 8, 2021)…22

*Gold v. Wolpert*, 876 F.2d 1327 (7th Cir.1989)…………………………….…34

*Herring v. Secretary, Dep't of Corr*., 397 F.3d 1338 (11th Cir. 2005)……………..34

*Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989)

*Jordan v. Union City*, 94 F. Supp. 3d 1328 (N.D. Ga. 2015)……………..……23

*Lobeck v. City of Riviera Beach*, 976 F.Supp. 1460 (S.D. Fla. 1997)………..…….38

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)……………..35

*Matias v. Terrapin House, Inc.,* 2021 WL 4206759 (E.D. Pa. Sept. 16, 2021)……27

*Mazzeo v. Color Resols. Int'l, LLC,* 746 F.3d 1264 (11th Cir. 2014)………………22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………18

*McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976)…………...38

*McFadden v. Biomedical Sys. Corp.*, 2014 WL 80717 (E.D. Pa. Jan. 9, 2014)……28

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518 (11th Cir. 1992)………18

*Mercantile Bank & Trust v. Fidelity Deposit Co.*, 750 F.2d 838 (11th Cir. 1985)….19

*Milligan v. Rambosk*, 2022 U.S. Dist. LEXIS 57218, (M.D. Fla. Mar. 29, 2022)...34

*TCC Air Servs., Inc. v. Schlesinger*, 2009 WL 56516 (S.D. Fla. Mar. 5, 2009)…...34

*Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994 (11th Cir. 1992)………………18

*Toney v. Alabama A&M University,* 2023 WL 1973203 (N.D. Ala. Feb. 13, 2023).23

*WBY, Inc. v. DeKalb Cnty.*, 695 F. App'x 486 (11th Cir. 2017)…………………..34

*United States v. Whitesell*, 314 F.3d 1251 (11th Cir. 2002) *cert. denied*, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003)…………………………...38

**Federal Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 U.S.C. § 621, et seq. ("ADEA"). . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 12102(3)(A) ("ADA")………………….…………………7, 21, 23, 26

**Federal Rules**

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . ... 14, 18

Federal Rule of Appellate Procedure 27(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . 40

**Eleventh Circuit Rules**

Eleventh Circuit Rule 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Eleventh Circuit Rule 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .. 40

**Statement of Jurisdiction**

This Court has jurisdiction of the instant appeal pursuant to 28 U.S.C. §1291, as the decision appealed from is a final order by the United States District Court for the Middle District of Florida, entered November 5, 2024 in this action brought pursuant to The Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA").

The Order granting summary judgment, R-68, was filed November 5, 2024, and the final Judgment in a Civil Action was filed November 6, 2024.  R-69.[1] The Notice of Appeal, R-73, was filed December 6, 2024.

---

[1] Citations to the record will be made by "R-" or "DE," followed by the docket entry number and the page number, or by "R-3-1, at" or "DE-3-1 " when the docket entry number includes a "-."

## Statement of the Issues

This appeal of the final order granting Appellees' motion for summary judgment raises three issues:

*One*, whether, based on the record evidence that Appellant's COVID symptoms at the time of her termination were more than "minor," the district court erred by requiring Grey to additionally show that her diagnosis of bilateral COVID pneumonia either "did or was expected to persist for over six months" to establish that she was regarded as disabled under the ADA.

*Two*, whether the district court erred in rejecting Appellant's comparator evidence based on Appellees' more favorable treatment of her similarly situated, younger replacement Maryann Vitkiez who did not suffer from COVID-19 and failed to close any new deals until several months after completing her 60-day probationary period before she was terminated a year later at the end of 2023 for her chronic poor performance and inappropriate behavior at a company function.

*Three*, if the district court properly admitted the comparator evidence and found that Appellant was regarded as disabled under the ADA, whether the curious timing of Grey's termination just one day after requesting reasonable accommodations, combined with the subjective and shifting nature of the termination reasons and the more favorable treatment of Maryann Vitkiez would have been sufficient under Rule 56 to raise an inference of pretext or create a

9

"convincing mosaic" sufficient to allow a reasonable jury to find that the Appellees discriminated against Grey.

**Statement of the Case**

**Course of proceedings and disposition below**

Appellant's Complaint in this matter was filed October 14, 2022 and raises claims for (i) disability discrimination under the Americans with Disabilities Act ("ADA"); (ii) retaliation under the ADA; and (iii) age discrimination under the Age Discrimination in Employment Act ("ADEA"). R-1.  The action was initially filed in the United States District Court for the Eastern District of New York before it was transferred to the Middle District of Florida on April 3, 2023.  R-15, R-16, R-17. t

Appellees' answer and affirmative defenses to Grey's claims under the ADA and ADEA were filed April 19, 2023.  R-22.

Following the close of discovery, Appellees filed their motion for summary judgment on July 3, 2024, R-60, accompanied by the parties' joint statement of material facts.  R-59.  Appellant's response to the motion for summary judgment was filed August 6, 2024. R-65.  To supplement their joint statement of undisputed facts, each party included additional statement of facts and supporting evidence with their respective briefs.

On August 19, 2024, Appellees filed their summary judgment reply brief, R-66, which addressed Appellant's arguments on the issue of comparator evidence but also included a new affidavit from Sales Manager Chris Tidball with previously

undisclosed testimony regarding the poor job performance of Appellant's younger replacement as senior sales executive.  R-66-10-11.

The district court granted summary judgment for Appellees on November 5, 2024. R-67. It found no dispute that Appellees articulated a legitimate, nondiscriminatory reason for Grey's termination "because of her lack of qualifications and inability to execute the basic requirements of her position, with the final straw occurring when she was "highly disrespectful" towards her supervisor during a team meeting."  R-67-  After considering Appellant's arguments based on the  timing of her termination, the "subjective and shifting nature of the termination reasons" and "the more favorable treatment" of Grey's successor Maryann Vitikiez, the district court concluded that "no reasonable jury could conclude that Grey's evidence tends to show that her employer's reasons for terminating her were pretextual." R-67-

Final judgment for Appellees was entered November 6, 2024, R-68, and Grey's notice of appeal was timely filed December 6, 2024.  R-73.

**Statement of the Facts**

After being recruited and vetted by an executive search firm, Appellant Deborah Grey was hired by Appellees for the position of Senior Sales Executive at a base salary of $150,000 per year. At the time of her hiring March 1, 2021, Grey was 69 years old. Although she had never previously sold subrogation insurance, she received her insurance license in 1995 and was well-qualified for the position based on her more than 25 years in sales, her general knowledge of the insurance field and her contact list with more than a thousand names of people she knew or had done business with over the years at different companies. R-59-2-3.

Upon starting her employment, Appellant completed the onboarding process for new employees, R-59-4-5, and began what was supposed to be a sixty-day probationary period to learn her job duties, build a "pipeline" and start making sales. R-59-5-7.

On April 5, 2021, Appellees hired Christopher Tidball as a Senior Sales Executive. Based on his extensive experience selling subrogation, Mr. Tidball was promoted to Sales Manager by the end of April and became Appellant's direct supervisor. R-59-6.

At the time of Mr. Tidball's hiring, Appellant was still getting up to speed on the services and subrogation products offered by Appellees while she learned about the clients that Appellees served and wanted to target. Her orientation had to be

13

paused after she weas diagnosed with COVID-19 on April 6, 2021, and after informing Appellees of her condition Grey missed more than a week of work due to her cough, fever and other symptoms while she waited at home for her doctor's clearance to return. R-59-8-9.

On April 15, 2021, Grey's primary care physician released her to "return to work Monday, April 19, 2021, without restrictions provide she is free of significant symptoms such as fever and cough for at least 24 hours before returning to work." She provided Appellees with a copy of the April 15th letter from her physician and returned to work on April 19, 2021 after missing a total of nine days.  On the day that she returned, Edward Jordan requested a copy Grey's lab results showing a diagnosis of SARS-CoV-2.   R-59-9-10.

During the remaining two weeks of her employment, Appellant continued to work despite reporting lingering symptoms from the COVID and continued.   On April 29, 2021, Appellant informed Mr. Jordan and Mr. Williams that her condition was not showing improvement and she had a CAT scan that showed viral COVID pneumonia. R-59-10-11.

Chris Tidball emailed Grey on May 3, 2021 to inform her that he was scheduling an in-person sales meeting at Second Look's New York office for the week of May 10 or May 17 and to see if she was available to travel.  That night, Appellant advised Mr. Tidball that due to her now suppressed immune system her

doctor had advised her not to travel until her lungs had completely healed from the viral pneumonia, but that she could attend by Zoom. Mr. Tidball approved the request less than 30 minutes later and Grey thanked him for his understanding: "I am doing all I know to get better. This Covid thing is really an unknown. Every day they seem to find something new. I still get fevers and then none. Oxygen has gone as low as 88 but thank God I have not needed to go to the hospital." R-65-2.

On May 4, 2021, just prior to the start of the Zoom sales meeting, Appellant provided Mr. Tidball with a note from her doctor to support the accommodation request that she made on May 3, 2021:

> Ms. Deborah Grey is still struggling with complications from a COVID-19 infection diagnosed on April 6, 2021. Unfortunately, she has lingering symptoms including cough and extreme fatigue. A CT scan of her chest on 4/27/2021 showed that she was still fighting bilateral COVID-19 pneumonia. Therefore, she may not travel until her respiratory symptoms clear up completely.

R-65-2.

Less than 24 hours after the after providing her doctor's note and attending the Zoom sales meeting, Appellant was terminated by Edward Jordan on May 5, 2021, without any prior warning, notice or explanation for his decision. R-59-13. In their Answer to Plaintiff's Interrogatory No. 2, Appellees claimed that they "made the decision to terminate Plaintiff on May 5, 2021 due to Plaintiff's lack of qualifications and performance."

The option of terminating Appellant was never discussed or even suggested by Bob Williams, Edward Jordan or Chris Tidball until they allegedly began to question her "attitude" and her overall ability to do her job within just a  few hours of the sales team meeting on May 4, 2021.  R-59-12-14.  Prior to the May 4 sales meeting, Appellant received encouragement and even some compliments from Messrs. Williams, Jordan and even Mr. Tidball as she completed the onboarding process and familiarized herself with subrogation issues, Appellees' business model, policies, procedures and their customer base.   After meeting with her first prospective client on April 1, 2021, Mr. Williams said that Appellant did a good job with the brochure she created with the data from Mr. Jordan even though it did not result in a sale.  R-65-19.

On May 18, 2021, Second Look hired 59-year old Maryann Vitkievicz to fill the Senior Sales Executive position that was previously held by Grey.  Appellees' sales records show that instead of terminating Ms. Vitikiez based on her failure to close a new deal or make any sales during her 60-day probationary period, Ms. Vitikiez was retained in her position for another 18 months. After failing to bring in any new business for nearly six months between June 2, 2021 and December 31, 2021, she only generated $326,317.47 in sales for the two clients she signed up during the first nine months of 2022 before she was fired. By contrast, Mr. Tidball generated $22,932,263.21 in new business in 2021 and $36,984,922.13 for 2022,

which was more than 100 times the revenue generated by Ms. Vitikiez in 2022. R-65-22.

During her approximately 18 months of employment with Appellees, Ms. Vitikiez was counseled by Chris Tidball on no less than 50 occasions for failing to capitalize on opportunities to "bring[] in sales."  In an email dated October 5, 2022, he noted that "[s]ince Maryann started in May, 2021, we had over 50 meetings that are documented where she was told that we needed to get things moved along and closed. Multiple times there were discussions about the need to get things closed before end of quarter and the need to push opportunities to closure."  R-65-23.

When Ms. Vitikiez was finally let go at the end of 2022, it was not for her chronic poor performance, but for getting drunk at a business function and embarrassing the company in public.

> So she came on, she was a good starter, she built a decent pipeline, made a couple early sales, and really had, you know, nothing -- she probably went a good bit of time without closing anything additional. There was an issue at one of the conferences, kind of an embarrassing issue, but I was at lunch one day sitting amongst strangers, and there was some discussion about a lady in a Second Look shirt that was out of control, intoxicated on a shuttle bus. Needless to say, I had a discussion with her and one of my other employees who witnessed everything, and it was true. She was put on a warning at that point. Inappropriate behavior, right, to do in public. You are the face of the company, and that's not the right thing to do. But at the end of the day, she just stopped closing deals, and we ended up terminating her about a year and a half in.

R-65-23.

**Statement of the Standard or Scope of Review**

This Court reviews a grant of summary judgment *de novo*. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999). A motion for summary judgment should be granted only if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997).

"[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton*, 9665 F.2d at 998 (citations omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery*

18

*Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v.*

*Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

## Summary of the Argument

The district court erred in granting Appellees' motion for summary judgment in this case under Rule 56 on the following grounds

As to Point I, the district court misinterpreted the burden of proof on Appellees' affirmative defense that Grey was not regarded as disabled under the ADA. Instead of requiring Appellees to demonstrates that the impairment is both transitory **and** minor to avail itself of the defense, the district court improperly shifted the burden to Appellant to essentially disprove both of these elements and then compounded its error by adding an additional requirement for Grey to present evidence that her diagnosis of bilateral COVID pneumonia either "did or was expected to persist for over six months" to establish that she was regarded as disabled under the ADA.

Regarding Point II, the district court's rejection of Maryann Vitikiez as a comparator for purposes of establishing a *prima facie* case or showing pretext was based new facts that were raised for the first time in a self-serving affidavit of Chris Tidball submitted with Appellees' reply brief. R-66-10-11. The district court's improper consideration of these "new facts" resulted in  significant prejudice to Appellant, since the undisputed record evidence cited by Appellant on the comparator issue otherwise provided more than sufficient support under Rule 56 to create a disputed issue of material fact on this critical issue.

20

At Point III Appellant argues that the result in this case under a proper application of Rule 56 would likely differ if the district court had applied the correct legal standards and properly allocated Appellees' burden of proof on its affirmative defense that Grey was not regarded as disabled under the ADA, or if it accepted Maryann Vitikiez as a valid comparator for purposes of showing disparate treatment under the ADA or the ADEA. Under either scenario, the district court would have been required to view Grey's pretext evidence in a different and more favorable light under Rule 56 that would have made summary judgment inappropriate under either McDonnell Douglas or this Court's "convincing mosaic" rubric for discrimination and retaliation claims based on circumstantial evidence.

**Argument**

**Point I**

**The district court erred in requiring Appellant to show both that her COVID symptoms at the time of her termination were more than "minor" and that her diagnosis of bilateral COVID pneumonia either "did or was expected to persist for over six months" to establish that she was regarded as disabled under the ADA,**

In "regarded as" cases under the ADA, a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have such an impairment at the time of the adverse employment action. 42 U.S.C. § 12102(3)(A). Further, under 42 U.S.C. § 12102(3)(A), for an employer to regard an individual as having a disability, the employer "must have regarded him as having a current impairment" which is not "transitory *and* minor." Id. § 12102(3)(B).

The ADA directs courts to construe "disability" in "favor of broad coverage of individuals" to the "maximum extent permitted by the terms" of the statute. *Id.* § 12102(4). Accordingly, Courts have noted that the bar to be considered "disabled" under the ADA is not a high one. *See, e.g., Mazzeo v. Color Resols. Int'l, LLC,* 746 F.3d 1264, 1268 & n.2 (11th Cir. 2014) (explaining that Congress instructed that "the establishment of coverage under the ADA should not be overly complex nor difficult" and quoting H.R. Rep. No. 110-730, at 9 (2008). The relevant inquiry is whether the employer perceived the plaintiff to have an impairment, not whether the plaintiff was actually impaired, *Forsyth v. Univ. of Ala., Bd. of Trs.*, 2021 WL

22

4075728, at *4 (11th Cir. Sept. 8, 2021) (per curiam), and the "relevant time period for assessing the existence of a disability . . . is the time of the alleged discriminatory act." *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

In *Toney v. Alabama A&M University*, the court noted that there are two important caveats to the "regarded as" definition of disability.

> First, the definition applies only when an employer perceives an employee as having an existing impairment at the time of the adverse employment action. *EEOC v. STME, LLC*, 938 F.3d 1305, 1316 (11th Cir. 2019). Second, the definition does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). An impairment is transitory if it has "an actual or expected duration of 6 months or less." *Id*. Whether an impairment "is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f).

*Toney v. Ala. A&M Univ*., No. 5:21-CV-689-LCB, 2023 WL 1973203, at *3 (N.D. Ala. Feb. 13, 2023).  To defeat summary judgment on this issue, a plaintiff need only raise a genuine issue of material fact about whether [her] employer regarded [her] as having a mental or physical impairment" and there is no requirement to also "establish [her] employer's beliefs concerning the severity of the impairment." *Jordan v. Union City*, 94 F. Supp. 3d 1328, 1336 (N.D. Ga. 2015) (internal quotation marks omitted), *aff'd*, 646 F. App'x 736 (11th Cir. 2016).

In this case, based on its "suspicion" that Appellant could not establish that she was regarded as disabled under the ADA, the district court never actually decided the issue based on its alternative finding that Grey could not show that the

23

alleged reasons for her termination were pretextual.  In a footnote, it explained that because Appellant only "manifested ordinary symptoms attendant to COVID-19 and experienced them for less than a month before her termination," the Appellees' argument that Grey's condition was "transitory and minor" shifted the ultimate burden of proof to Appellant "to show that her condition did or was expected to persist for over six months" and "yet she points to no such evidence in her response." R-

The decision in this case to place the ultimate burden of proof on Appellant to show that her perceived disability was regarded as both "transitory and minor" was error.  As the district court noted in its own opinion in *Booth v. GTE Fed. Credit Union* 8:21-cv-1509-KKM-JSS (M.D. Fla. Nov. 20, 2021), "[t]he plain meaning of "and" in § 12102(3)(B) "requires both aspects be present" and an employer cannot establish the defense unless it demonstrates that the impairment is both transitory *and* minor." *Id*. (citing 29 C.F.R. § 1630.15(f)).

While Appellees admittedly challenged the notion that they regarded Appellant as being disabled on grounds that the ADA does not apply to impairments that are "transitory and minor" their arguments mostly focused on the "transitory" aspect of the "transitory and minor" exception, ignoring the "minor" component when there were sufficient disputed material facts to permit a reasonable jury to conclude that Grey's diagnosis of bilateral COVID pneumonia and her symptoms at

the time of her termination were anything but "minor."   The evidence of record on this issue includes the following:

•       Grey became sick in early April 2019 with COVID-19 and missed two weeks of work.  R-65-1.

•       Appellant provided Robert Williams with this update about her condition on April 13, 2021: "Humble apologies but I have never been this sick in my entire life. . . . I will try to call you on Wed. if I can stop coughing and breathe. Otherwise, it will be Thursday." Two days later, she advised Mr. Williams that "I was not a candidate for the antibody as too much time had passed. I was able to get lvermectin, Hydrochlroquine, Prednesone and a nebulized medicine. . . I am still having gastrointestinal problems but my cough and ability to breath is a lot better." R-65-1.

•       On April 15, 2021, Ms. Grey's primary care physician released her to "return to work Monday, April 19, 2021, without restrictions provide she is free of significant symptoms such as fever and cough for at least 24 hours before returning to work." R-65-1-2.

•       Appellant returned to work on April 19, 2021 and provided Mr. Jordan with a copy of her lab results showing a diagnosis of SARS-CoV-2. She  continued to work until her termination on May 5, 2021 while still suffering lingering symptoms from COVID infection.  R- 65-1-2.

- At some point following her diagnosis, Robert Williams told Appellant that an older person "suffer[s] worse than a younger person" when contracting COVID, a comment Gray understood as Williams expressing authentic concern for her. R-59-5.

- On April 29, 2021, Appellant sent an email to Mr. Jordan and Mr Williams, stating: "My Cat Scan results came in today. I have viral pneumonia. Grateful no blood clots. Yes, I am working." R- 65-1-2.

- On May 3, 2021 at 4:02 PM, after learning that the Second Look was scheduling an in-person sales meeting later that month at the company headquarters in New York, Appellant emailed her supervisor, Sales Manager Chris Tidball, to advise him that "I will not be able to travel until my lungs heal . . . My doctor does not want me to travel so I could attend by Zoom." R-65-2.

- After Mr. Tidball provided his written approval for Grey to attend the sales meeting in New York via Zoom later that month, Appellant submitted a doctor's note on May 4, 2021 stating that she "is still struggling with complications from a COVID-19 infection diagnosed on April 6, 2021. Unfortunately, she has lingering symptoms including cough and extreme fatigue. A CT scan of her chest on 4/27/2021 showed that she was still fighting bilateral COVID-19 pneumonia. Therefore, she may not travel until her respiratory symptoms clear up completely." R- 65-2.

Given the statutory language of 42 U.S.C. § 12102(3)(B) and absence of any requirement for a plaintiff to "establish [her] employer's beliefs concerning the severity of the impairment" to be regarded as disabled, *see Jordan*, *supra*, at 1336, (N.D. Ga. 2015), it was improper and prejudicial for the district court to reverse the burden of proof on an employer under Rule 56 regarding this critical issue.   Instead of requiring Appellees to show that Grey's COVID 19 was both transitory ***and*** minor, the district court cited its own subjective "suspicion" that Appellant manifested "only ordinary symptoms attendant to COVID-19 and experienced them for less than a month before her termination" as a basis for requiring Grey to "produc[e] some evidence that her condition did or was expected to persist for over six months" to establish a *prima facie* case.

When the correct legal standards under Rule 56 are applied to Appellees' affirmative defense that Grey was not regarded as disabled, there is little doubt that Appellant raised a genuine issue of material fact about whether she was regarded as having a mental or physical impairment that was not both "transitory ***and*** minor" under the applicable case law and 42 U.S.C. § 12102(3)(B). *See  Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 246 (3d  Cir. 2020) (citing  42 U.S.C. § 12102(3)(B) and holding that "an impairment that is transitory because it lasts less than six months but is objectively non-minor must also fall outside the 'transitory and minor' exception"); *Matias v. Terrapin House, Inc.,* No. 5:21-cv-02288, 2021 WL 4206759,

27

at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that COVID-19 may be an ADA disability as it is not always transitory and is not minor).

In addition to being clearly erroneous, the district court's failure to apply the proper standard for determining whether a plaintiff was regarded as disabled in this case resulted in significant prejudice by depriving Appellant of any opportunity to establish a *prima facie* case of discrimination or retaliation under the ADA. The impossibility of establishing a *prima facie* case further crippled Grey's ability to establish pretext based on the timing of her termination decision less than two weeks after notifying Appellees' that she had been diagnosed with a more persistent and severe strain of COVID pneumonia that had caused significant damage to her respiratory system and less than one day after requesting reasonable accommodations supported by a note from her doctor confirming her "lingering symptoms including cough and extreme fatigue" and restricting her ability to travel for an indeterminate period of time until her "respiratory symptoms clear up completely." *See, e.g., McFadden v. Biomedical Sys. Corp.*, No. 13-cv-4487, 2014 WL 80717, at *5 (E.D. Pa. Jan. 9, 2014) (plaintiff's dismissal within one week following request for medical leave supported inference that plaintiff was "regarded as" disabled and established causal connection to termination).

The inference of a causal connection between Appellant's perceived disability her request for accommodation and her termination in this case is further

28

strengthened by lack of any evidence of that Appellees were critical of Appellant or her job performance before she advised them that her "ordinary" COVID-19 symptoms that already caused her to miss more than a week of work had not improved and that she had been diagnosed with a more serious form of the virus involving pneumonia in both of her lungs and which was likely to restrict her ability to travel for an extended period of time until she was completely recovered.

**Argument**

**Point II**

**The district court erred in rejecting Appellant's comparator evidence of Appellees' more favorable treatment of her 59-year old replacement Maryann Vitikiez who did not close her first new deal until more than six months after completing her 60-day probationary period and was terminated for misconduct at the end of 2023 after bringing in only two new clients during the 18 months she was employed**

Less than two weeks following Appellant's termination on May 5, 2021, Maryann Vitikiez was hired to replace Appellant as a salesperson less than two weeks within a month of Appellant's termination to , failed to generate any new business for the first six months of her employment (through December 31, 2021) and she only brought in two new clients for the entire year in 2022

Although the parties Joint Statement of Facts acknowledged that on May 18, 2021, Second Look hired "a salesperson by the name of Maryann Vitikiez" who was 59 years old, Appellees did not mention Ms. Vitikiez or present any arguments regarding  comparator evidence in their motion for summary judgment.

In her response to the motion for summary judgment, Appellant argued that Ms. Vitikiez was a valid comparator for purposes of establishing a *prima facie* case of discrimination under the applicable Eleventh Circuit standards and that her favorable treatment by Appellees should also be considered evidence of pretext.  The evidence cited by Appellant included the following:

30

- Ms. Vitikiez was specifically hired to replace Appellant less than two weeks after Grey was terminated and held the same job title. R-

- Ms. Vitikiez was identified in Appellees' interrogatory answers as "the person . . . who assumed Plaintiff's job title and/or her primary duties and responsibilities following her separation from employment with Defendant." R-

- Ms. Vitikiez and Appellant were each supervised by Sales Manager Chris Tidball.  R-

- Ms. Vitikiez had the same written job description as Appellant and her primary function was sales R-

- Like Appellant, Ms. Vitikiez did close any deals or bring in any new business during her 60-day probationary period, yet she was still retained on a permanent basis R-

- Appellee's sales records show that Ms. Vitikiez did not generate any new business between June 2, 2021 and December 31, 2021, and she only generated $326,317.47 for the two clients she signed up during the first nine months of 2022 before she was fired at the end of the year for getting drunk at a company function. R-

- In an email dated October 5, 2022, Chris Tidball noted that "[s]ince Maryann started in May, 2021, we had over 50 meetings that are

documented where she was told that we needed to get things moved along and closed. Multiple times there were discussions about the need to get things closed before end of quarter and the need to push opportunities to closure." R-

After failing to raise any arguments regarding comparator evidence in their summary judgment motion, Appellees mocked Grey's arguments on the issue for "misstat[ing] the evidence" in "last-ditch effort to survive summary judgment." Even though Ms. Vitikiez had the same job title, they denied she "replaced" Ms. Grey because she "performed vastly different job duties" such as "explor[ing] a different area of clients" and helping to build out the company website." Appellees also accused Appellant of "misrepresent[ing]" Chris Tidball's email to falsely claim that Ms. Vitkievicz "was *counseled* by [Mr.] Tidball on no less than 50 occasions for failing to capitalize on opportunities to 'bring[] in sales."

To support their argument that Ms. Vitikiez was not a valid comparator, Appellees attached a new affidavit from Mr. Tidball to their reply brief, in which he testified for the first time in the case that despite her chronic lack of sales, his email was not intended to express any dissatisfaction with Ms. Vitikiez' abysmal sales numbers, instead, he was simply referring to the fact that Ms. Vitikiez had attended 50 weekly sales meetings before her termination for misconduct, none of which involved any specific criticism of her performance as a salesperson.

32

In its order granting summary judgment, the district court rejected any

consideration of Ms. Vitikiez as a valid comparator:

> Finally, Grey points to her successor, Vitkievicz. She contends that like her, Vitkievicz made few sales during her first few months with Second Look. Unlike her, though, Second Look left Vitkievicz in her role for over a year and did not fire her until she became drunk at a company event. Resp. at 22–23. Also unlike her, Grey says, Vitkievicz's supervisors met with her over fifty times to encourage her to improve her performance. Id. On Grey's view, this disparate treatment of a similarly situated, younger successor not suffering from COVID-19 is evidence that Second Look terminated Grey on a protected basis. This argument is not support by the record.
>
> The undisputed testimony is that while Vitkievicz was hired into the same Senior Sales Executive role that Grey had, Vitkievicz's focus was different and she had additional duties. Vitkievicz was responsible for building out Second Look's website, developing promotional materials, and exploring a new angle in the subrogation business. (Doc. 59-2) at 118–19; (Doc. 59-3) at 59–60. What is more, Second Look leadership testified that Vitkievicz developed a much better sales pipeline than Grey early on, even if neither closed any deals during their probationary period. Compare (Doc. 59-6) at 155 (describing Vitkievicz as a "good starter" who "built a decent pipeline"), with JSOF ¶ 80 (observing that Grey's "pipeline wasn't growing" and that she was not "on a track where she was going to be successful" (quoting (Doc. 59-6) at 103–04)). As for the fifty meetings that Vitkievicz's supervisors had with her, these were ordinary weekly sales meetings like the one that was the catalyst for Grey's termination. See (Doc. 66) at 10–11.
>
> Neither the defendants' explanations for Grey's termination nor their treatment of Vitkievicz support an inference that the reasons for Grey's termination were pretextual. By itself, the proximity between her (granted) request for accommodation and her termination do not create a jury question on the issue of pretext. For the same reasons, Grey has not presented a "convincing mosaic" that would allow a reasonable jury to conclude that defendants discriminated against her. Summary judgment is thus appropriate.

R-62-

As an initial matter, the district court's exclusion of Maryann Vitkiez as a

comparator for purposes of establishing a prima facie case or showing pretext should

be reversed on procedural grounds because it is well established that a party cannot for the first time in a reply memorandum assert new facts or arguments to support a summary judgment motion. *Milligan v. Rambosk*, No. 2:20-cv-403-FtM-29MRM, 2022 U.S. Dist. LEXIS 57218, at *8 n.1 (M.D. Fla. Mar. 29, 2022) ("A party, however, cannot raise new arguments in support of summary judgment for the first time in a reply brief.") (citing *WBY, Inc. v. DeKalb Cnty*., 695 F. App'x 486, 491-92 (11th Cir. 2017) (citation omitted); *Herring v. Secretary, Dep't of Corr*., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks omitted); *Cost Recovery Servs. LLC v. Alltell Communications, Inc*., 259 F. App'x 223, 226 (11th Cir. 2007) (reversing summary judgment and holding that a party cannot raise a new argument or evidence in a reply brief to a motion for summary judgment without giving the non-movant an opportunity to respond). *see also United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir.2002) (Court need not address issue raised for first time in reply brief), *cert. denied*, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003).

Bringing up new facts in a reply brief is also improper if no good reason exists for why the party could not have introduced the facts in its original motion. *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir.1989); *TCC Air Servs., Inc. v. Schlesinger*, No. 05–80543–CIV, 2009 WL 56516, at *7 (S.D. Fla. Mar. 5, 2009)

(rejecting reply evidence that was available to plaintiffs when they filed their principal motion and plaintiffs understood the necessity of submitting such evidence); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894–95, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

The district court committed prejudicial error in this case when it relied on "new facts" raised in Chris Tidball's self-serving affidavit attached as an exhibit to the reply brief to reject all of Appellant's arguments and evidence on the comparator issue and draw every possible inference in Appellees' favor to find that Maryann Vitkiez was not similarly situated.

## Argument

## Point III

**If the district court properly admitted the comparator evidence and found that Appellant was regarded as disabled under the ADA, the curious timing of her termination just one day after requesting reasonable accommodations, combined with the subjective and shifting nature of the termination reasons and the more favorable treatment of Maryann Vitkiez would have been sufficient under Rule 56 to raise an inference of pretext or create a "convincing mosaic" sufficient to allow a reasonable jury to find that the Appellees discriminated against Grey under the ADA or the ADEA**

After expressing serious doubt that Appellant could establish that she regarded as disabled, drawing all inferences in favor of Appellees' favor as to the termination reasons and rejecting Maryann Vitikiez as a valid comparator, the district court concluded that summary judgment was appropriate, noting that "[b]y itself, the proximity between her (granted) request for accommodation and her termination do not create a jury question on the issue of pretext," and that "[f]For the same reasons, Grey has not presented a 'convincing mosaic' that would allow a reasonable jury to conclude that defendants discriminated against her."

While it may have been a relatively easy call to grant summary judgment after balkanizing and disregarding the evidence that Appellant's bilateral COVID pneumonia was regarded as a disability and rejecting her comparator evidence, Appellant has shown in this appeal that the district court erred in both of its rulings

on these critical issues.   Had the district court ruled in Grey's favor on even one of them, the outcome under Rule 56 and the applicable case law would in all likelihood have been very different.

As Grey argues in Point I, *supra*, if the district court had employed the correct legal standards and burden of proof to Appellee's affirmative defense that her alleged disability was "transitory and minor,"  instead of erroneously requiring her to prove two negatives, it would have been compelled to find that Grey was regarded as disabled and could therefore establish a *prima facie* claim under the ADA for both discrimination and retaliation.   At a minimum, a finding that Grey was regarded as disabled would have permitted the district court to give more weight to the timing issue, both as part of the prima facie case and on the issue of pretext.

In addition to the more favorable analysis that Appellant's ADA claims would have received if she was found to be regarded as disabled, a finding that Maryann Vitikiez was a valid comparator based on her more favorable treatment with respect to her sales requirements could very well have changed the outcome on both the ADA and the ADEA claims.   When a claim is based on disparate treatment, establishing a *prima facie* case is sufficient evidence of pretext so that no further evidence is necessary. *See Lobeck v. City of Riviera Beach*, 976 F.Supp. 1460, 1467 n. 3 (S.D. Fla. 1997) ("[h]aving established a prima facie case of disparate discipline, plaintiff need not demonstrate further evidence of pretext" because disparate

discipline alone can be sufficient to establish pretext); *Jones v. Gerwens*, 874 F.2d 1534, 1541 n. 12 (11ᵗʰ Cir. 1989) (evidence of disparate discipline is sufficient to establish pretext) (citation omitted).

The Supreme Court has noted, with respect to a claim of discriminatory discharge: "Of course, precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas*, an allegation that other 'employees involved in acts against [the employer] of comparable seriousness . . . were nevertheless retained' is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976). (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. at 1825).

## **Conclusion**

Based on the authorities cited and arguments presented, Appellant, Deborah Grey, respectfully requests this Court to reverse the final order of summary judgment and remand this case to the district court for further proceedings.

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by CM/ECF this day on all Counsel of Record on the Service List provided below.

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This computer-generated document font complies with the type-volume limit of 11th Cir. R. 32 and 27.   It was prepared in Times New Roman 14-point and excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), it contains 7,951 words.

Respectfully Submitted,

*/s/ Christopher C. Sharp*
Christopher C. Sharp
Florida Bar No. 996858
SHARP LAW FIRM, P.A.
1600 W. State Road 84, Suite C
Fort Lauderdale, Florida 33315
Phone: (954) 909-4246
Fax: (954) 206-8444
csharplaw@aol.com
chris@csharplawfirm.com
*Attorney for Appellant*

Dated:  June 10, 2025

# SERVICE LIST

Christopher C. Sharp
Florida Bar No. 996858
SHARP LAW FIRM, P.A.
1600 W. State Road 84, Suite C
Fort Lauderdale, Florida 33315
Phone: (954) 909-4246
Fax: (954) 206-8444
csharplaw@aol.com
chris@csharplawfirm.com
*Attorney for Appellant*

Jason A. Collier
Florida Bar No. 0733318
Ryan M. Guerin
Florida Bar No. 1011326
SHUMAKER, LOOP & KENDRICK, LLP
240 S. Pineapple Avenue
P.O. Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660; (941) 366-3999 fax
jcollier@shumaker.com
dmills@shumaker.com
*Attorneys for Appellees*

41