IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Case No. 24-14020

_____

DEBORAH GREY,

*Plaintiff-Appellant,*

v.

VENGROFF WILLIAMS, INC. and SECOND LOOK, INC.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Middle District of Florida (Tampa Division)
Case No. 8:23-cv-687-KKM-CPT
Honorable Kathryn Kimball Mizelle

_____

APPELLEES' PRINCIPAL BRIEF

_____

JASON A. COLLIER, ESQ.
Florida Bar No. 0733318
DUANE A. DAIKER, ESQ.
Florida Bar No. 8280
Shumaker, Loop & Kendrick, LLP
240 S. Pineapple Ave., 10th  Floor
Sarasota, FL 34236
jcollier@slk-law.com
ddaiker@slk-law.com
(941) 366-6660
Attorneys for Appellees

*Grey v. Vengroff Williams*                                          C-1 of 1
Case No. 24-14020

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellee, VENGROFF WILLIAMS, INC. and SECOND LOOK, INC., make the following statement pursuant to Eleventh Circuit Rule 26.1-1.  The following persons and business entities have an interest in the outcome of this appeal:

1.    Collier, Jason A., Counsel for Defendants/Appellees

2.    Daiker, Duane A., Counsel for Defendants/Appellees

3.    Grey, Deborah, Plaintiff/Appellant

4.    Guerin, Ryan M., Counsel for Defendants/Appellees

5.    Second Look, Inc., Defendant/Appellee

6.    Sharp, Christopher C., Counsel for Plaintiff/Appellant

7.    Sharp Law Firm, P.A., Plaintiff's/Appellant's law firm

8.    Shumaker, Loop & Kendrick, LLP, Defendants'/Appellees' law firm

9.    Vengroff Williams, Inc., Defendant/Appellee

Pursuant to Eleventh Circuit Rule 26.1-3(b), undersigned counsel certifies that no publicly traded company or corporation has an interest in this appeal.

/s/ *Duane A. Daiker*
Duane A. Daiker
Attorney for Appellees

2

## STATEMENT REGARDING ORAL ARGUMENT

Appellees, Vengroff Williams, Inc. and Second Look, Inc., respectfully request this Court deny oral argument and schedule this matter on the non-argument calendar. This appeal presents no new or unique legal issues. The dispositive issues have been authoritatively decided based on the undisputed facts. Oral argument would not significantly aid this Court's decisional process. The facts and legal arguments are adequately presented in the briefs and record. *See* Rule 34(a)(2)(B)-(C), FED. R. APP. P.; 11th Cir. Rule 34-3(b)(2)-(3).

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................... 2

Statement Regarding Oral Argument ........................................................................ 3

Table of Contents .................................................................................................... 4

Table of Citations ................................................................................................... 5

Statement of the Case ............................................................................................. 7

Standard of Review ............................................................................................... 13

Summary of the Argument .................................................................................... 14

Argument .............................................................................................................. 15

I.      The district court was correct to find the undisputed record facts
        objectively show that Ms. Grey's alleged condition was
        "transitory and minor" so she could not be "regarded as" disabled
        under the ADA ........................................................................................... 16

II.     The district court was correct to find Ms. Grey's comparator
        evidence relating to Maryann Vitkievicz did not support an
        inference of pretext. ................................................................................... 22

III.    The district court was correct to find Ms. Grey's evidence relating
        to the timing of her termination and the stated reasons for termination
        did not support an inference of pretext or a "convincing mosaic." .............. 27

Conclusion ........................................................................................................... 30

Certificate of Compliance ..................................................................................... 31

Certificate of Service ............................................................................................ 31

# TABLE OF CITATIONS

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................ 14

*Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*,
   793 Fed. Appx. 896 (11th Cir. 2019).................................................................... 27

*Chapman v. AI Transport*, 229 F. 3d 1012 (11th Cir. 2000) .................................. 14

*Damon v. Fleming Supermarkets of Fla., Inc.*,
   196 F. 3d 1354 (11th Cir. 1999) ........................................................................ 14

*EEOC v. STME, LLC*, 938 F. 3d 1305 (11th Cir. 2019).................................... 17, 21

*Forsyth v. Univ. of Ala. Bd. of Trs.*,
   2021 WL 4075728 (11th Cir. Sept. 8, 2021) ...................................................... 20

*Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F. 3d 1121 (11th Cir. 2020) ....... 29

*Herring v. Sec'y, Dept. of Corr.*, 397 F. 3d 1338 (11th Cir. 2005) ........................ 26

*Holifield v. Reno*, 115 F. 3d 1555 (11th Cir. 1997) ............................................... 22

*Lewis v. City of Union City*, 918 F. 3d 1213 (11th Cir. 2019)......................... 22, 24

*Shannon v. Nat'l R.R. Passenger Corp.*, 774 Fed. Appx. 529 (11th Cir. 2019)..... 23

*Smith v. Lockheed-Martin Corp.*, 644 F. 3d 1321 (11th Cir. 2011) ...................... 29

*Thomas v. Cooper Lighting, Inc.*, 506 F. 3d 1361 (11th Cir. 2007) ...................... 21

*Toth v. Sec'y, Florida Dep't of Corr.*, 778 Fed. Appx. 624 (11th Cir. 2019) ........ 24

*Wascura v. City of S. Miami*, 257 F. 3d 1238 (11th Cir. 2001)............................. 16

*Wright v. Greensky, Inc.*, 2021 WL 2414170 (S.D. Fla. June 14, 2021).......... 26, 27

*Yelling v. St. Vincent's Health Sys.*, 82 F. 4th 1329 (11th Cir. 2023) ................... 29

**Statutes**

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101..............................15 *

42 U.S.C. § 12102................................................................................ 16, 17, 20

**Regulations**

29 C.F.R. § 1630.15 ..................................................................................... 17, 20

## STATEMENT OF THE CASE

Appellees, Vengroff Williams, Inc. and Second Look, Inc., offer the following statement of the facts relevant to this appeal.  The "Statement of Facts" in Appellant's principal brief provides numerous unsubstantiated "facts" and subjective characterization of facts that are not properly part of the record below.  *See* Appellant's Principal Brief, at 13-17.  The following facts derive entirely from the Joint Statement of Undisputed Facts submitted to the district court [R-59], and facts otherwise deemed admitted [R-58, at 3].  The district court's Third Amended Case Management and Scheduling Order required the party opposing summary judgment to specifically identify any disputed facts, "with citations to the record, in the memorandum responding to the motion for summary judgment," or any such uncontroverted facts "shall be deemed admitted." [R-58, at ¶7(c)].  In opposing summary judgment, Ms. Grey did not identify *any* disputed facts in Defendant's Statement of Material Facts in her response to the motion for summary judgment. [R-65].  As such, the district court considered all of the appellees/defendants' facts as undisputed. [R-67, at 2-4, note 1].

### Undisputed Facts

*The Parties*

Vengroff Williams, Inc. is a Florida corporation formed in 1963 as a collection agency. [R-59, at ¶1-2].  Vengroff Williams, Inc. has its principal place of business

7

in Sarasota, Florida. [R-59, at ¶1]. Second Look, Inc. is a division of Vengroff Williams, Inc., and has been selling subrogation services since 1993. [R-59, at ¶3]. Second Look, Inc. is a New York corporation, with its principal place of business in Hauppauge, New York. [R-59, at ¶4]. For the purposes of this appeal, neither the district court nor the parties have asserted a legal distinction between the appellees, who will be referred to collectively as "Second Look." [R-67, at 7, note 3].

The plaintiff below, Deborah Grey ("Ms. Grey"), has been licensed to sell insurance since 1995. [R-59, at ¶1-2]. Ms. Grey had no prior experience selling subrogation services prior to her employment at Second Look. [R-59, at ¶5].

*Ms. Grey is Interviewed and Hired by Second Look*

Ms. Grey was 69 years old and unemployed when she interviewed for employment with Second Look. [R-59, at ¶¶8, 9, 12]. Ms. Grey was interviewed by videoconference over Zoom by Second Look's Chief Executive Officer Robert Williams ("Mr. Williams") and Second Look's President Edward Jordan ("Mr. Jordan"). [R-59, at ¶¶9, 10]. On March 3, 2021, Second Look offered Ms. Grey the position of Senior Sales Executive, at a base salary of $150,000 per year. [R-59, at ¶11]. Ms. Grey did not request, and did not need, any type of accommodation during the interview process. [R-59, at ¶14].

Second Look hired Ms. Grey as an at-will employee, so either party could end the employment relationship at any time, with or without cause or notice. [R-59, at

¶17]. Upon starting her employment, Ms. Grey received a copy of Second Look's Employee Handbook, and signed an acknowledgement confirming that she would comply with Second Look's policies. [R-59, at ¶18]. Second Look's Employee Handbook contained an Equal Opportunity Policy, which sets forth the company's stance against discrimination of any kind. [R-59, at ¶19]. Second Look's Equal Opportunity Policy also provides that the company will make reasonable accommodations for employees with disabilities. [R-59, at ¶20]. At the time of her employment, Ms. Grey understood Second Look's policy against discrimination, and its policy of providing reasonable accommodations to employees with disabilities. [R-59, at ¶21].

Ms. Grey also acknowledged Second Look's Introductory Period Employees ("Introductory Period") policy, which provides that the first sixty days of employment are a probationary period during which the company may evaluate the employee's performance and may terminate employment at any time, with or without cause or notice. [R-59, at ¶¶24, 25, 26]. Ms. Grey understood that her first sixty days of employment were on a trial basis pursuant to the Introductory Period policy, and that Second Look had "60 days to decide if they want to keep you or not." [R-59, at ¶¶26, 27].

*Ms. Grey's Employment Begins*

Ms. Grey's first day of employment at Second Look was March 15, 2021. [R-59, at ¶15]. Ms. Grey lived in North Carolina, and worked remotely the entire time she was employed at Second Look, although she understood there would be times she would need to travel as part of her job duties. [R-59, at ¶16]. At the time of her hire, Ms. Grey reported to Mr. Jordan. [R-59, at ¶28]. Soon thereafter, she reported to Second Look's new Sales Manager, Christopher Tidball ("Mr. Tidball"). [R-59, at ¶¶29, 30, 31].

Ms. Grey was hired to sell subrogation services. [R-59, at ¶33]. Second Look provided her with extensive training materials, as well as many hours of personal one-on-one training. [R-59, at ¶¶34-39]. Second Look also made specific recommendations for outside training materials and resources. [R-59, at ¶40].

*Early Performance Issues*

On April 1, 2021, Ms. Grey emailed Mr. Jordan and suggested that she could "fudge" or omit 2020 data in a client presentation. [R-60, at 3, ¶6]. Mr. Jordan immediately instructed her that such conduct was unacceptable, and both he and Mr. Williams viewed the suggestion as a serious ethical concern. [R-60, at 3-4, ¶8-10]. Ms. Grey's response was hostile, and very concerning. [R-60, at 4, ¶9].

10

*Ms. Grey Contracts COVID-19*

Ms. Grey did not work from April 6 through 9, 2021, due to contracting COVID-19 ("COVID"). [R-59, at ¶41].  After being diagnosed on Tuesday, April 6th, Ms. Grey requested the remainder of the week off, and her request was granted with "no problem." [R-59, at ¶43-44].  Ultimately, Ms. Grey did not return to work until Monday, April 19, 2021, after missing nine days of work. [R-59, at ¶¶46-59].  She was released by her physician to return to work without restrictions. [R-59, at ¶60].  Ms. Grey was able to resume her regular full-time job duties, and never requested any additional time off work, nor did she request any accommodation. [R-59, at ¶¶58-63].  Second Look never deducted any leave from Ms. Grey's allotment while she was out of work, and she was fully paid for all days she missed work due to COVID. [R-59, at ¶¶64-65].

*Second Look's Weekly Sales Meetings*

Second Look held weekly sales meetings where sales employees discussed "the highlights of what you had done the week before, and what you planned on doing the following week." [R-59, at ¶67].  Ms. Grey repeatedly failed to follow Mr. Tidball's instructions on how to present at weekly sales meetings, despite being counseled on the proper procedure several times. [R-60, at 6-9, ¶¶27-29, 32].

On May 3, 2021—a full two weeks after Ms. Grey's unrestricted return to work—Mr. Tidball reached out to Ms. Grey attempting "to coordinate a sales

meeting in our Long Island office for either the week of 5/10 or 5/17." [R-59, at ¶¶58-60, 71]. Ms. Grey responded, stating "I will not be able to travel until my lungs heal…My doctor does not want me to travel so I could attend by Zoom." [R-59, at ¶72]. Although this was the first time that Ms. Grey advised anyone at Second Look that her doctor did not want her to travel, her attendance at the New York meeting by Zoom was immediately approved without issue. [R-59, at ¶¶72-75].

At the weekly sales meeting on May 4, 2021, Ms. Grey was "belligerent," "rude," "aggressive," and "highly disrespectful" toward her supervisor, Mr. Tidball. [R-60, at 7, ¶33,35]. Mr. Williams characterized the meeting as one of the more distressful meetings in his 44 years in the business. [R-60, at 8, ¶36]. Mr. Jordan believed Ms. Grey "was combative and wasn't a good team member." [R-60, at 8, ¶37]. Even Ms. Grey recognized her own conduct was challenging toward Mr. Tidball, and admitted regretting her behavior. [R-60, at 8, ¶38].

Ms. Grey's reporting of her own activity at the meeting was incorrect because her own email records showed only seven emails being sent out for the week, which would represent a poor work ethic. [R-60, at 8, ¶¶39-40]. Although the purpose of Ms. Grey's job was to make sales, Ms. Grey never made any sales during her employment. [R-60, at 8, ¶41]. In fact, nothing ever came from Ms. Grey's detailed list of 7,000 contacts that she represented during her interviews. [R-60, at 8, ¶42].

12

*Second Look Terminates Ms. Grey*

Following the May 4th meeting, Mr. Jordan and Mr. Williams made the decision to terminate Ms. Grey, with input from Mr. Tidball. [R-59, at ¶78]. Mr. Tidball was concerned that Ms. Grey did not have the network or contacts to make her successful, was disrespectful to her superiors, and showed no likelihood of developing a sales pipeline. [R-59, at ¶79]. Furthermore, Mr. Tidball found that Ms. Grey was not likely to be successful based on a number of key indicators, including having a list of clients that are not decision-makers, as well as the fact that her sales pipeline was not growing, and she was focused on non-value-added tasks. [R-59, at ¶80]. Ms. Grey's lack of productivity, her behavior at the sales meeting, and her attitude, including her inclination toward "fudging numbers," concerned Mr. Williams and Mr. Jordan, and they did not believe that Ms. Grey was going to be a fit for the sales team. [R-60, at 9, ¶43]. Ms. Grey was terminated by Second Look on May 5, 2021, while still within the sixty day Introductory Period. [R-59, at ¶81].

Ms. Grey admits that she received full compensation for all time she worked at Second Look. [R-59, at ¶89]. She also acknowledges that her absences from work during her employment had no bearing on her termination. [R-59, at ¶93].

**STANDARD OF REVIEW**

The Court reviews a grant of summary judgment *de novo*, applying the same legal standards as the district court, and viewing the evidence in the light most

13

favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F. 3d 1354, 1357 (11th Cir. 1999). However, this Court's review is plenary and independent, and the district court's decision may be affirmed on any ground supported by the record. *Chapman v. AI Transport*, 229 F. 3d 1012, 1023 (11th Cir. 2000) (*en banc*).

## SUMMARY OF THE ARGUMENT

The district court's grant of summary judgment should be affirmed because Ms. Grey has failed to demonstrate any reversible error. First, Ms. Grey's Americans with Disabilities Act claim fails as a matter of law because the undisputed record facts demonstrate her alleged impairment was both transitory and minor, and thus she was not protected under the ADA. Even if the ADA applied, summary judgment was independently warranted because Ms. Grey failed to present any evidence that Second Look's legitimate, non-discriminatory reasons for her termination were pretextual.

Ms. Grey's comparator evidence is insufficient as a matter of law. The district court correctly found that her proposed comparator, Maryann Vitkievicz, was not similarly situated to Ms. Grey in all material respects, given the differences in job duties, performance, and the circumstances of termination. Ms. Grey's arguments on this point are unsupported by the record, and do not establish pretext.

14

Ms. Grey's remaining arguments regarding the timing of her termination and the alleged subjectivity or inconsistency of Second Look's stated reasons are likewise unavailing. The record demonstrates that her termination was based on legitimate performance and conduct concerns, and there is no evidence of suspicious timing, ambiguous statements, or systematically better treatment of similarly situated employees. Accordingly, Ms. Grey has not identified any record evidence that would permit a reasonable jury to find pretext, or to infer discrimination from a "convincing mosaic" of circumstantial evidence. Accordingly, the district court's summary judgment should be affirmed in all respects.

## ARGUMENT

Appellant, Deborah Grey ("Ms. Grey"), has failed to demonstrate reversible error by the district court in entering summary judgment. Appellees, Vengroff Williams, Inc. and Second Look, Inc. (collectively referred to as "Second Look" for appellate purposes),[1] will address each of Ms. Grey's arguments below in the order presented in her principal brief.

Ms. Grey's first argument is that her claim is properly brought under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (the "ADA"),

---

[1] The parties and the district court have not distinguished between the appellees for summary judgment purposes. [R-67, at 7, note 3]. The appellees dispute that Ms. Grey was employed by Vengroff Williams, Inc., but such distinction is not relevant to the current appeal, while being preserved for argument on remand if necessary.

because she was "regarded as" having a disability.  Although the trial court did not specifically rule on this issue, this Court may consider any grounds appearing in the record, including that Ms. Grey's condition was only "transitory and minor," and thus she was not protected by the ADA. *See* infra part I.  Such a  finding would end this Court's analysis, and the summary judgment must be affirmed.

Moreover, even if the ADA protections apply to Ms. Grey, the district court also found that she failed to establish pretext or discriminatory motive, which independently supports affirmance. *Wascura v. City of S. Miami*, 257 F. 3d 1238, 1242 (11th Cir. 2001) (affirming summary judgment where plaintiff failed to create a genuine issue of material fact as to pretext); R-67, at 10, note 5.  Ms. Grey has not identified any record evidence that Second Look's legitimate, non-discriminatory reasons for termination were a pretext for disability discrimination. *See infra* parts II and III.  As such, the summary judgment must be affirmed.

> **I.    The district court was correct to find the undisputed record facts objectively show that Ms. Grey's alleged condition was "transitory and minor" so she could not be "regarded as" disabled under the ADA.**

The ADA prohibits discrimination against a qualified individual on the basis of disability, including when an employee is "regarded as" having a physical or mental impairment. 42 U.S.C. § 12102(3)(A).  However, the statute expressly excludes from the "regarded as" definition any impairment that is both "transitory

16

and minor"—defined as an impairment with an actual or expected duration of six months or less, and that is objectively minor. 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.15(f); *see also EEOC v. STME, LLC*, 938 F. 3d 1305, 1316 (11th Cir. 2019). The "transitory and minor" exception is an objective standard, and generally the employer must show that the impairment is both short in duration and minor in severity to avoid the "regarded as" characterization, and the resulting potential liability. 29 C.F.R. § 1630.15(f).

Ms. Grey contends that the district court erred in requiring her to demonstrate that her COVID symptoms were more than "transitory and minor" to avoid summary judgment in favor of her employer, Second Look. *See* Appellant's Principal Brief, at 22-29. However, the district court addressed the "regarded as" issue only in a footnote, stating that it "suspect[ed]" Ms. Grey could not establish a prima facie case under the ADA, but ultimately did not decide the issue because it found that Ms. Grey could not demonstrate pretext. [R-67, at 10, note 5]. Nevertheless, the district court explained that because Ms. Grey only "manifested ordinary symptoms attendant to COVID-19 and experienced them for less than a month before her termination," and because Second Look argued her condition was "transitory and minor," the burden would shift to Ms. Grey to show that her condition did, or was expected to, persist for over six months, and "yet she points to no such evidence in her response." [R-67, at 10, note 5].

17

Ms. Grey argues for reversible error relating to this digression, which appears only as dicta in a footnote. *See* Appellant's Principal Brief, at 22-29. The district court's discussion of the "transitory and minor" exception was expressly not required, and any error in this analysis would not constitute reversible error—as noted by the district court. [R-67, at 10, note 5]. Nevertheless, the trial court's analysis was correct, and provides another basis for affirmance because Ms. Grey's alleged condition was clearly "transitory and minor."

The undisputed evidence shows that Ms. Grey's COVID symptoms were typical, lasted less than a month, and that she was cleared by her physician to return to work without restrictions on April 19, 2021—just thirteen days after she first became ill. [R-59, at ¶¶58-63]. Her only subsequent limitation was a temporary restriction on travel, which was promptly accommodated by Second Look. [R-59, at ¶¶72-75]. Ms. Grey was able to resume her regular full-time job duties, and never requested any additional time off work, nor did she request any further accommodation. [R-59, at ¶¶58-63]. The district court noted there was no evidence that Second Look perceived Ms. Grey as having a long-term or substantially limiting impairment. [R-67, at 10, note 5].

The facts highlighted by Ms. Grey in this appeal are entirely consistent with the undisputed record facts supporting summary judgment. *See* Appellant's Principal Brief, at 25-26. Ms. Grey was undoubtedly sick with COVID symptoms on April

13, 2021, but "a lot better" by April 15, 2021. [R-65, at 1].  Her primary care physician released her to return to work, if free of significant symptoms for at least 24 hours, on April 19, 2021—and she did return to work that day. [R-59, at ¶54]. Ms. Grey described her condition as "lingering symptoms" from COVID. *See* Appellant's Principal Brief, at 25; R-65, at 2.

Although Ms. Grey was later diagnosed with viral pneumonia, she had no other significant diagnosis, and was working full-time at her job. [R-65, at 2].  She did not have any need to go to a hospital for care. [R-65, at 2].  Other than an air travel restriction "until her lungs had healed," there were no other restrictions, and she worked full-time, including attending the sales meeting by Zoom. [R-65, at 2]. Ms. Grey was able to resume her regular job duties, and never requested any additional time off work, nor did she request any other accommodation. [R-59, at ¶¶58-63].  As noted by the district court, the most favorable interpretation of the record evidence is that Ms. Grey had bilateral COVID pneumonia—that did not prevent her from working her regular full-time job duties—and the condition would continue for an unknown period of time. [R-67, at 10, note 5; R-59, at ¶¶59-62].  In fact, immediately following Ms. Grey's termination, her overall health was "better than her pre-COVID baseline." [R-60, at 5, ¶21].[2]

---

[2] This is an undisputed fact for summary judgment purposes. [R-67, at 10, note 1].

19

There was simply no record evidence that Ms. Grey suffered from any condition that was not both "transitory and minor."  An impairment that is both "transitory and minor" has an actual or expected duration of six months or less, and is objectively minor. 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.15(f).  Any alleged impairment that allows an employee to perform her regular full-time duties without accommodation is, by definition, objectively minor.  Ms. Grey cites no legal authority to the contrary, relying only on her own subjective characterization of the undisputed facts. *See* Appellant's Principal Brief, at 24-25.  Furthermore, she returned to full-time work after only thirteen days of illness (only nine missed days of work), with no indication in the record of any significant impairment, and certainly no impairment that would last more than six months.  As such, Ms. Grey cannot demonstrate any genuine issue of material fact, or any corresponding error in the summary judgment applying the "transitory and minor" exception.

Ms. Grey's legal argument that the district court misapplied the burden of proof is similarly unavailing.  Admittedly, under the ADA, the employer must show both transitory duration and minor severity, but the undisputed facts here satisfy both prongs. *See Forsyth v. Univ. of Ala. Bd. of Trs.*, 2021 WL 4075728, at *4 (11th Cir. Sept. 8, 2021) (affirming summary judgment where plaintiff's impairment was transitory and minor).  Ms. Grey's COVID symptoms resolved within weeks, she returned to full-time work, and her only accommodation request—a temporary travel

20

restriction—was granted without issue. There is no evidence of any ongoing or severe limitation, nor any evidence that Second Look regarded her as disabled within the meaning of the ADA. Regardless of which party bore the burden, the *undisputed facts* establish that Ms. Grey's condition was both transitory and minor. Any imprecision in the district court's footnoted dicta regarding the burden was harmless.

Furthermore, this Court may affirm summary judgment on any ground that appears in the record, whether or not that ground was relied upon by the district court. *See Thomas v. Cooper Lighting, Inc*., 506 F. 3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."). If the district court was correct that Ms. Grey's condition was both transitory and minor, then she is not protected by the ADA, and her ADA claims must fail as a matter of law. This Court need not reach any of the alternative arguments regarding pretext, comparators, or timing. *See STME*, 938 F. 3d at 1316 ("Because we conclude that [plaintiff] was not regarded as disabled, we need not address the other issues raised on appeal."). The district court's discussion of the "transitory and minor" exception was correct as a matter of law and fact, and the summary judgment must be affirmed in its entirety.

21

**II.    The district court was correct to find Ms. Grey's comparator evidence relating to Maryann Vitkievicz did not support an inference of pretext.**

If this Court finds Ms. Grey was not covered by the ADA, this Court need not reach this issue, and must affirm the summary judgment. *See supra* part I.  However, the district court also ruled that Ms. Grey failed to establish pretext or discriminatory motive, which is also fatal to her claims. [R-67, at 10-11, 18].  Ms. Grey attempted to demonstrate pretext with "comparator" evidence. [R-67, at 16-17].

Under the ADA, a plaintiff alleging disparate treatment must show that similarly situated employees were treated more favorably, and to be a valid comparator, another employee must be similarly situated in all material respects, including job duties, performance expectations, and relevant conduct. *See Lewis v. City of Union City*, 918 F. 3d 1213, 1220–27 (11th Cir. 2019) (*en banc*) (holding comparators must be "similarly situated in all material respects"); *Holifield v. Reno*, 115 F. 3d 1555, 1562 (11th Cir. 1997) (holding plaintiff must show comparators are similarly situated in all relevant respects).  Ms. Grey's proposed comparator, Maryann Vitkievicz, was a 59 year old woman hired for a sales position at Second Look approximately two weeks after Ms. Grey was terminated. [R-59, at ¶¶94-95].  Ms. Grey argues that Second Look's allegedly more favorable treatment of a similarly situated younger woman not suffering from COVID was evidence that Ms. Grey was terminated on a protected basis. [R-65, at 22-25; R-67, at 16].

22

The district court correctly found, based on undisputed record facts, that Ms. Vitkievicz was not similarly situated in all material respects. [R-67, at 17]. Although both women held the same job title, Ms. Vitkievicz's role included significant non-sales responsibilities, such as building a website, developing promotional materials, and exploring new business lines. [R-59-2, at 117-18; R-67, at 17]. Management also viewed Ms. Vitkievicz's early performance and sales pipeline more favorably than Ms. Grey's, whose pipeline was stagnant and who was not on track for success. [R-59-6, at 154; R-59, at ¶80; R-67, at 17]. Critically, the circumstances leading to Ms. Grey's termination—her disruptive conduct at a team meeting—were not present with respect to Ms. Vitkievicz. [R-59, at ¶77; R-60, at 7, ¶33,35; R-66, at 11; R-67, at 17].

On appeal, Ms. Grey argues that Ms. Vitkievicz is a valid comparator based upon certain alleged record facts *without a single citation to the record*. *See* Appellant's Principal Brief, at 30-35.[3]  Ms. Grey's failure to cite the record, as required by Rule 28(a)(8)(A), Federal Rules of Civil Procedure, and Eleventh Circuit Rule 28-1, prejudices Second Look's ability to respond, and warrants disregarding all unsupported factual assertions. *See Shannon v. Nat'l R.R. Passenger Corp.*, 774 Fed. Appx. 529, 538 (11th Cir. 2019) (declining to consider arguments not

---

[3] Ms. Grey's only record cite in this argument section is to the district court's order granting summary judgment in favor of Second Look (R-67), which she mis-cites as "R-62." *See* Appellant's Principal Brief, at 33.

supported by citation to the record).  This Court is not required to search the record to find support for Ms. Grey's arguments. *Id.*

Second Look cannot properly and effectively address the unsupported allegations without record citations. *Id.*  Furthermore, Ms. Grey is not permitted to remedy these shortcomings in her reply brief, which would be unfair to Second Look, and further violate well-established appellate principles. *See Toth v. Sec'y, Florida Dep't of Corr.*, 778 Fed. Appx. 624, 625 (11th Cir. 2019) (holding that simply raising an issue in the initial brief does not preserve that issue for full argument in the reply brief).

Even if Ms. Grey's factual allegations in her principal brief are accepted as accurate, her argument fails for all the reasons properly identified by the district court. [R-67, at 17].  The record demonstrates that Ms. Vitkievicz was not similarly situated in all material respects. The differences in job duties, management's assessment of performance, and the circumstances of termination, are precisely the types of "material respects" that preclude a valid comparator under *Lewis*.  *See* 918 F. 3d at 1227 (comparators must be "nearly identical" to the plaintiff to prevent courts from second-guessing reasonable employer decisions).

Ms. Grey also challenges the district court's consideration of Mr. Tidball's affidavit, submitted with Second Look's summary judgment reply. *See* Appellant's Principal Brief, at 32-35.  Second Look did not make any arguments relating to the

24

alleged comparator evidence in its motion for summary judgment for all the reasons discussed above—Ms. Vitkievicz was not similarly situated to Ms. Grey, and not a proper comparator.  Ms. Grey, however, first raised the comparator evidence in her opposition to summary judgment. [R-65, at 22-23].

In particular, Ms. Grey argued that she was treated "strikingly different" than Ms. Vitkievicz with regard to job performance because Ms. Vitkievicz was allegedly "counseled by Chris Tidball on no less than 50 occasions for failing to capitalize on opportunities to 'bring[] in sales,'" but remained employed. [R-65, at 23].   In response, Second Look characterized this statement as a misrepresentation of the record. [R-66, at 5-6].  The source material quoted for Ms. Grey's characterization referred to having "over 50 meetings," and never used the word "counseled," or any term that could be considered disciplinary. [R65, at 23; SLK000780].

To clarify these facts for summary judgment, Second Look submitted an affidavit of Mr. Tidball to expound upon the context of the source document. [R-66, at 10-11].  The affidavit identified the "over 50 meetings" as the regular weekly sales meetings, and clarified that any comments made regarding sales were to "all sales employees," and that there was nothing disciplinary in nature implied toward Ms. Vitkievicz, or any sales employee. [R-66, at 10-11].  The district court accepted this clarification, which took all of the value out of these facts for opposing summary judgment. [R-67, at 17].

25

Ms. Grey now raises, for the first time on appeal, that Second Look's submission of the affidavit of Mr. Tidball along with its summary judgment reply brief was procedurally improper. *See* Appellant's Principal Brief, at 33-35. However, Ms. Grey did not file a motion to strike, or a motion to permit a surreply, or otherwise raise this issue with the district court in any fashion.

In support of this argument on appeal, Ms. Grey cites to an ordinary line of cases standing for the proposition that a party cannot raise new argument or evidence in a reply brief. *See, e.g., Herring v. Sec'y, Dept. of Corr.*, 397 F. 3d 1338, 1342 (11th Cir. 2005) (holding arguments raised for the first time in a reply brief are waived). Interestingly, Ms. Grey acknowledges that including new facts in a reply brief can be proper if "good reason" exists—but then ends her analysis too quickly. *See* Appellant's Principal Brief, at 33-35.

The most compelling "good reason" for new facts is to serve as rebuttal evidence. New facts are procedurally proper when they directly rebut points raised for the first time in the non-movant's opposition to summary judgment, and do not raise wholly new factual issues. *See Wright v. Greensky, Inc.*, No. 20-CV-62441, 2021 WL 2414170, at *4 (S.D. Fla. June 14, 2021) (holding rebuttal evidence in reply is proper when it directly addresses points raised in opposition). In this case, the affidavit of Mr. Tidball was narrowly focused on rebutting Ms. Grey's incorrect characterization of the routine weekly sales meetings as something disciplinary or

punitive toward Ms. Vitkievicz. [R-66, at 10-11].  The affidavit was pure rebuttal evidence, directly rebutting points first raised by Ms. Grey in opposition to summary judgment, and not raising wholly new factual issues. *See Wright*, 2021 WL 2414170, at \*4.

The only pertinent limitation on new rebuttal evidence is that district courts must permit the non-movant an opportunity to respond—if requested. *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 Fed. Appx. 896, 901 (11th Cir. 2019).  Ms. Grey had ample opportunity to request a reply (78 days from the reply brief to the order granting summary judgment), but did not do so.  The district court was correct to consider proper rebuttal evidence that was unchallenged by Ms. Grey prior to this appeal.

In summary, Ms. Grey cannot show that Ms. Vitkievicz was similarly situated in all material respects, and the comparator evidence does not support an inference of pretext or discrimination.  The district court's ruling on this issue must be affirmed.

**III.    The district court was correct to find Ms. Grey's evidence relating to the timing of her termination and the stated reasons for termination did not support an inference of pretext or a "convincing mosaic."**

If this Court finds Ms. Grey not covered by the ADA, this Court need not reach this issue, and must affirm the summary judgment. *See supra* part I.  Ms.

Grey's third issue on appeal appears to be a repetition of arguments previously made regarding pretext evidence, as well as additional arguments referenced but not fully developed in this appeal. *See* Appellant's Principal Brief, at 36-38.  To the extent Ms. Grey is again arguing that Maryann Vitkievicz was a valid comparator, Second Look has established that Ms. Vitkievicz was not similarly situated in all material respects, and the alleged comparator evidence does not support an inference of pretext or discrimination. *See supra* part II.  To the extent Ms. Grey is again arguing that she should have been "regarded as" having a disability because her condition was not "transitory and minor," the undisputed record facts do not support such a finding. *See supra* part I.

Although only argued summarily in the argument heading, the timing of Ms. Grey's termination was not at all "curious," but entirely expected. *See* Appellant's Principal Brief, at 36.  Ms. Grey was terminated during her Introductory Period [R-59, at ¶¶81], and one day after a disastrous performance at a company-wide sales meeting [R-60, at 7-8, ¶33, 35-38].  There is no record evidence to suggest her termination related to her request to appear at a future sales meeting by Zoom, which was granted in less than thirty minutes, and without complaint or reservation. [R-59, at ¶¶73-74; R-65, at 2, ¶3].  Nevertheless, the district court correctly noted [R-67, at 11] that temporal proximity between a request for accommodations and termination is not sufficient proof of pretextual motives to survive summary judgment. *Yelling*

*v. St. Vincent's Health Sys.*, 82 F. 4th 1329, 1341 (11th Cir. 2023) ("[T]iming alone is not enough to show pretext.") (citing *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F. 3d 1121, 1138 (11th Cir. 2020)).

Ms. Grey also mentions, only in the argument heading, that Second Look provided "subjective and shifting" reasons for her termination. *See* Appellant's Principal Brief, at 36. The district court addressed this contention in detail in the summary judgment order. [R-67, at 11-16]. The district court found that Second Look's explanations for the termination were consistent with each other, and with the record. [R-67, at 16].

Ms. Grey could also potentially survive summary judgment by presenting a "convincing mosaic" of circumstantial evidence that would allow a jury to infer discrimination. *See Smith v. Lockheed-Martin Corp*., 644 F. 3d 1321, 1328 (11th Cir. 2011). However, the undisputed record does not demonstrate any evidence of suspicious timing, ambiguous statements, or systematically better treatment of similarly situated employees. [R-67, at 17]. Accordingly, Ms. Grey has not identified any record evidence that would permit a reasonable jury to find pretext, or to infer discrimination from a "convincing mosaic" of circumstantial evidence. The district court's judgment must be affirmed.

## CONCLUSION

The summary judgment entered in favor of Vengroff Williams, Inc. and Second Look, Inc. should be affirmed in all respects.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue
Post Office Box 49948
Sarasota, Florida  34230-6948
(941)  366-6660
Attorneys for Appellees

By: */s/ Duane A. Daiker*
Jason A. Collier
Fla. Bar No. 0733318
jcollier@shumaker.com
Duane A. Daiker
Fla. Bar No. 0008280
ddaiker@shumaker.com
Ryan M. Guerin
Fla Bar No. 1011326
rguerin@shumaker.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation, typeface requirements, and type-style requirements of Rule 32(a), Federal Rule of Appellate Procedure, and Eleventh Circuit Rule 32. The brief contains 5,494 words, excluding the parts of the brief exempted by Rule 32(f).

/s/ *Duane A. Daiker*
Duane A. Daiker
Attorney for Appellees

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 29, 2025, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ *Duane A. Daiker*
Duane A. Daiker
Attorney for Appellees

31